# EXHIBIT 1

1   Laurence Lang
    C-28866 CTF-C F-140
2   P.O. Box 689
    Soledad, CA. 93960-0689

3

4

# S151406

5

6   In The California Supreme Court

SUPREME COURT
# FILED

7

8   APR - 2 2007

9   Frederick K. Ohlrich Clerk

10  Laurence Lang           )        DEPUTY
                            )
11      petitioner          )        Case No.
                            )        **Superior Court A-196619**
12  v.                      )        **Court Of Appeals No.** B-196099
    Arnold Schwartzenegger  )        **Petition for Review**
13      respondent          )
                            )
14  _____)

15

16

17      **This requested Petition for Review stems from a denied Habeas petition
18  in the SuperiorCourt On December 29th 2006 Case No. A-196619 and the California
    Court of Appeals On** _March 23rd_ **Case No.** B-196099 **2007**

19

20

21

22

23  RECEIVED

24  APR 2 - 2007

25  CLERK SUPREME COURT

26

27                                      Laurence Lang
                                        C-28866 CTF-C F-140
28                                      P.O. Box 689
                                        Soledad, CA. 93960-0689

1

1  Laurence Lang
   C-28866 CTF-C F-140
   P.O. Box 689
2  Soledad, CA. 93960-0689

3

4

5

6                    **In The California Supreme Court**

7

8

9

10  Laurence Lang              )        Case No.A-196619
11           petitioner        )
         v.                    )        **Petition For Review**
12  Arnold Schwartzenegger     )
13           respondent        )
14  _____        )

15

16                       **INTRODUCTION**

17

18      Petitioner Laurence D. Lang is an indeterminately sentenced inmate confined in the California

19  Prison System at Soledad, California.

20      Petitioner is challenging the reversal of his Parole Grant by the Executive Branch (Governor

21  Schwartzenegger).

22      Petitioner's claims assert that the Executive Branch (Governor) lacked "Some Evidence" to deny

23  him parole sufficient enough to override the California Penal Code Section 3041(b), his federally

24  protected liberty interest in parole, and his right to due process under the 14th Amendment to the U.S.

25  Constitution.

26      Petitioner also claims that the Trial Court (Torrance Superior Court) failed to render a reasoned

27  opinion to his petition and also failed to apply the Standard of review applicable to his requested action.

28  //

                                    2

# HISTORY

1

2      Laurence Lang (Petitioner) has been incarcerated for more than 26 years. He was convicted in

3    1981 of second degree murder. Petitioner had attended 10 parole consideration hearings to this date..

4      The Board of Parole Hearings BPH (Formally the Board of Prison Terms BPT ) denied Petitioner's

5    parole application 9 consecutive times basically for the circumstances surrounding the commitment

6    offense.

7      On May 1, 2006, at Petitioner's 10th Parole Consideration the BPH found him suitable for parole.

8    The BPH reviewed all the documents available from his previous parole hearings including the decisions

9    rendered in those hearings.

10     The BPH is an extension of the Executive Branch of California Government. The BPH found that

11   Petitioner no longer posed a risk of danger to public safety if released on parole.

12     The Governor is the head of the Executive Branch and is bound to review the same information

13   considered by the BPH.  On September 22, 2006, the Governor reversed the parole grant.  In the

14   Governor's Reversal of Petitioner's Parole Confirmation, he stated that the elements of the crime, i.e.,

15   "The nature and circumstances of the second-degree murder perpetrated by Mr. Lang are alone sufficient

16   for me to conclude presently that his release from prison would pose an unreasonable public-safety

17   risk.".

18     Petitioner challenged this decision by the governor in the form of a Writ of Habeas

19   Corpus. Since there is no administrative appeals process for an Executive Reversal of Parole.

20     On December 29, 2006, the Superior Court read and considered the information provided

21   in the Petition for Writ of Habeas Corpus.  The court concluded that the Governor's decision

22   to reverse Petitioner's parole grant was supported by the evidence (See Superior Court

23   Exhaustion Attached).

24     It is the opinion of this Petition that the Superior Court failed to apply the standard of

25   review defined in controlling case law under the doctrine of Stare Decisis.  This is the normal

26   practice followed in the state courts.  See, e.g., Auto Equity Sales. Inc. v. Superior Court of

27   Santa Clara County. 57 Cal. 2d 450, 20 Cal Rptr. 321, 369 P.2d 937, 940 (Cal. 1962) (". . .

28

1    court exercising inferior jurisdiction must accept the law declared by courts of superior

2    jurisdiction. It is not their function to attempt to overrule decisions of a higher court.")

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## QUESTIONS OF LAW

2

**1.    DID THE EXECUTIVE BRANCH LACK "SOME EVIDENCE" WHEN IT REVERSED PETITIONER'S PAROLE GRANT BASED SOLELY ON THE CIRCUMSTANCES SURROUNDING THE COMMITMENT OFFENSE, THEREBY VIOLATING PETITIONER'S LIBERTY INTEREST AND DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION.**

3

4

5

**2.    BY NOT APPLYING THE APPROPRIATE 'STANDARD OF REVIEW' DID THE TRIAL COURT AND CALIFORNIA COURT  OF APPEALS FAILE TO RENDER A REASONED OPINION CONSISTENT WITH  STARE DECISIS WHEN IT DENIED PETITIONER'S HABEAS CORPUS PETITION THUS VIOLATING HIS STATE AND FEDERAL RIGHT TO DUE PROCESS .**

6

7

8

9

10

## Table of Authorities

11

12    In re Rosenkrantz, 29 Cal 4th 616 (2002) ............................................................ 8,9, 13,18,20

13    In re Elkins,  50 Cal. Rptr. 3d, 503(2006)

14    Martin v. Marshal, 431 F.Supp 2nd 1038 (N.D. Cal 2006)1 .................................................11

15    In re Wen Lee,  DJDAR 13961(2006) .............................................. 7,13,14,15,16,18

16    McQuillion v. Duncan, 306 F.3d (9th Cir. 2002) ................................................. 10,13,18

17    In re Dannenberg,  34 Cal 4th 1061 (2005) ................................................ 14,15 17,19,20

18    In re Wieder, 2006 DJDAR 15795 (2006) ...............................................................

19    Biggs v. Terhune, 334 F3d 910 (9th Cir. 2003) ................................................ 8,9,10,12,13,14,23

20    In re Shauputis, 37 Cal. Rptr. 3d at 335 (2006) ...................................................... 8,13

21    Masoner v. State, 2004 W.L. 1080177 1-2 (C.D. Cal. 2004) ................................................ 9,12

22    Irons v. Warden, 358 F.Supp. 2d at 947 (2005) ...................................................... 8,11,15,18,23

23    In re Scott, 119 Cal. App. 4th 595; 34 Cal. Rptr. 3d at 919-920 (2004) ..................................... 7,14,15,16

24    Rosenkrantz v Marshall 444 F. Supp. 2d 1063, (2006) ........................................................ 8,9,

25    Auto Equity Sales, Inc,. v Superior Court of Santa Clara County, 57 Cal. 2d 450 (1962) ...................... 3

26    People v. Murtishaw, 29 Cal 3d (1981) ........................................................................ 7

27    People v. Boyd 38 Cal. 3d 762 (1985) ......................................................................... 7

28    In re Minnis 7 Cal. 3d 639 ................................................................................... 8

1

## Table of Authorities Continued

2

3    In re Ramirez 94 Cal. App. 4th .......................................................................... 15

4    In re Seabock 140 Cal App. 3d (1983) ..................................................................

5    In re Rodriguez 14 Cal. 3d (1975) .................................................................... 10

6    Hunter v. Disabato137 F. Supp 2d (1998) ........................................................ 10

7    Morrissey v. Brewer 408 U.S. 471, 481, 92 S Ct. 2593, 33 L. Ed. 2d 484 (1972) ............ 11

8    Bair v. Folsom State Prison, WL 2219220 (E.D. Cal.) (2005) .................................. 13

9    Caswell v. Calderon363 F. 3d 832 839 (9th Cir, (2004) ..................................... 14,18

10   Superintendent v. Hill 472 U.S. 445-447 (1985)9,14 .......................................... 9,14

11   People v. Salcido 263 Cal. App. 2d 1 (1968) ..................................................... 14

12   In re Smith 109 Cal. 4th 489, 504 (2003) ...................................................... 15,18

13   In re Lowe 130 Cal. App. 4th 1405 (2005) ......................................................... 16

14   In re Deluna 126 Cal. App. 585 (2004) ............................................................ 16

15   In re Capistran 132 Cal App. 4th 872, 874 (2003) ............................................... 17

16   In re Van Houten 116 Cal. App. 4th 339 (2004) .................................................. 17

17   Hicks v. Feiock 485 U.S. 624, 629-30 (1988) ..................................................... 20

18   Roper v. Simmons 125 S.Ct 1183, 543 U.S. 551 161 L Ed 2d 1 (2005) ........................ 21

19   Thompson v. Oklahoma 487 U.S. 815, 835 (1988) ............................................. 21,22

20   Johnson v. Texas 509 U.S. 350 368 (1993)..........................................................

21   In re Smith 114 Cal. App. 4th 343,370 372 (2003)............................................. 14, 16

22   U.S. v. Roston 986 F. 2d 1287, 1290 (9th Cir 1983)............................................. 15

23   People v. Nieto Benitez 4 Cal. 4th 91, 102 (1992)............................................... 15

24   In re Jeanice D. 28 Cal. 3d 210, 213 (1980)...................................................... 21

25   Stanford v. Kentucky 492 U.S. 361 395 (1989)................................................... 22

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Question 1**

**DID THE EXECUTIVE BRANCH LACK "SOME EVIDENCE" WHEN IT REVERSED PETITIONER'S PAROLE GRANT BASED SOLELY ON THE CIRCUMSTANCES SURROUNDING THE COMMITMENT OFFENSE, THEREBY VIOLATING PETITIONER'S LIBERTY INTEREST AND DUE PROCESS RIGHTS UNDER THE 14TH AMENDMENT TO THE U.S. CONSTITUTION.**

Petitioner's case is very similar to many cases currently being reversed by the California Courts. It is clear from the Transcripts that Petitioner has been cleared and deemed not a public safety risk Penal Code 3041(b). It has taken Petitioner 10 Parole Hearings to finally be deemed suitable for parole by the BPT.

Petitioner cannot call this long term confinement excessive for murder is a horrible crime. However, Petitioner can say that time will bring about a change in the lives of those individuals who desire change.

The governor bases his decision to reverse Petitioner's Parole grant solely on the circumstances surrounding his 27 year old offense, stating that Petitioner remains a threat to public safety. The governor produces **no evidence** to validate his findings. This topic has been discussed in In re Scott, 119 Cal. App. 4th 595.

"The Governor states in his decision that the gravity of Scott's offense is alone a sufficient basis 'on which to conclude that his release from prison *at this time* would pose an unreasonable public risk.' *That statement could be repeated annually until Scott dies or is rendered helpless by the infirmities of sickness or age.*" (*Id.* at p. 919-920 fn. 9 (emphasis in original)). "It is worth noting, as has our Supreme Court (*People v Murtishaw* (1981) 29 Cal.3d 733,768, disapproved on other grounds in People v *Boyd* (1985) 38 Cal.3d 762), that a large number of legal and scientific authorities believe that, even where the passage of time is not a factor and the assessment is made by an expert, predictions of future dangerousness *are exceedingly unreliable*." (*Id.* at p. 920 fn. 9; (Petition for Review was denied in *Scott* on November 30, 2005, 2005 DJDAR 13803)).

Regarding the "crime" petitioner was committed occurred 27 years ago, this passage of time was

1    discussed in Wen Lee, supra, 2006 DJDAR 13961, as to Mr. Lee's parole denial on a conviction of

2    "attempted premeditated murder" and "second degree murder of Mrs. Soong and two firearm

3    enhancements" in which the Court stated that:

4    "Lee's crimes almost 20 years ago have lost much of their usefulness in foreseeing the likelihood of future offenses than if he

5    had committed them five or ten years ago. (In re Scott, supra, 133 Cal.App.4th 573, 595 [past crime's value for predicting future

6    crime diminishes over time])." (Id. at 13964-13965).

7    The question is further reasoned as to the affect on a prisoners liberty interest in parole and the due

8    process prisoner are entitled to when being denied parole or in the instant case reversed by the Executive

9    Branch from a confirmed parole date. In In re Shaputis, 37 Cal.Rptr.3d 324, 135 Cal.App.4th 217

10   (2005), relying on Biggs v Terhune, 334 F.3d 910, 916 (9th Cir. 2003), which is another post

11   Dannenberg case, wrote:

12   "[A]lthough reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling

13   the requirements by state law, where an inmate over time continues to demonstrate exemplary behavior and evidence of

14   rehabilitation, denying him a parole date simply because of the nature of prior conduct would raise serious questions

15   involving his liberty interest in parole." (Id at p. 335, citing also, Irons v Warden of California State Prison Solano (E.D.

16   Cal. 2005) 358 F.Supp. 2d 936, 947 and fn.2).

17   Shaputis held that reliance on a parole applicant's "former life-style" prior to imprisonment to deny

18   parole, that such reliance on such an "historical relic" is an "arbitrary and capricious [decision] within

19   the differential standards articulated by Rosenkrantz, supra, 29 Cal.4th 616." (Shaputis, supra, 37 Cal.

20   Rptr. 3d at 335; Rosenkrantz v Marshall, 444 F.Supp.2d 1063, 2006 WL 2327085 at *15 (C.D. Cal.

21   2006) [citing Shaputis for the same proposition]).

22   Even the court in In re Rosenkrantz , 29 Cal.4th 616 (2002), indicated that the Board *may not*

23   indefinitely rely on the nature of the offense to find petitioner unsuitable for parole. A close

24   examination of what the California Supreme Court stated in Rosenkrantz illuminates this reasoning:

25   "The nature of the prisoners offense, alone can constitute a sufficient basis for denying parole, (In re Minnis, supra, 7 Cal. 3d 639, 647;

26   In re Ramirez, supra, 94 Cal.App.4th 549, 569, In re Seabock (1983) 140 Cal.App. 3d 29, 36-37.) *Although the parole authority is*

27   *prohibited from adopting a blanket rule that automatically excludes*

28

1    ***parole for individuals whom have been convicted of a particular
2    type of offense,*** the authority properly may weigh heavily the degree
3    of violence used and the amount of viciousness shown by a defendant.
     (Rosenkrantz, supra, 29 Cal.4th at 682-683 [emphasis added] ).

4    **(A)   Repetitive use of the crime to reverse Petitioner's
             parole grant by the Executive Branch violates
5            Petitioner's right to due process under the 14th
             Amendment to the U.S. Constitution.**

6

7    This claim was argued extensively in In re Rosenkrantz, supra 29 Cal. 4th 654:

8    Rosenkrantz not only recognizes a due process "liberty interest" in parole (*Id.* at 654, 661),

9    it also recognizes that petitioner has a right to individual consideration of parole aimed at determining

10   whether petitioner presents an unreasonable risk to the public if he is released on parole. The crime's

11   facts may be considered, but not if it makes a blanket rule that petitioner is unsuitable for parole.

12   In Rosenkrantz, Mr. Rosenkrantz, because he felt he was "humiliated" by a family friend, purchased

13   an UZI and 250 rounds of ammunition, confronted his victim and shot the victim "at least 10" times,

14   "including six wounds to the head." (Rosenkrantz, supra, 29 Cal.4th at 628 - 629). After years of Court

15   litigation, the federal court in Rosenkrantz v Marshall, 444 F.Supp.2d 1063, 2006 WL 2327085 (C.D.

16   Cal. 2006), regarding repetitive use of the commitment offense and conduct prior to imprisonment to

17   deny parole, granted habeas relief and wrote:

18           "Petitioner's case is exactly what *Biggs* envisioned when it stated
             that repeated refusals to grant a parole release date to an inmate
19           with an exemplary post-conviction record may violate the
             prisoner's due process rights. *Biggs,* 334 F.3d at 919. The record
20           is replete with evidence of petitioner's remorse and rehabilitation,
             including glowing positive psychological reports, extensive self-
21           improvement through educational and vocational advancements
             as well as therapy, valued service in promoting the penological
22           goals of the prison, and nearly two decades of disciplinary-free
             incarceration. The evidence of petitioner's outstanding
23           performance while incarcerated is particularly significant. As the
             Supreme Court has recognized, '[t]he behavior of an inmate during
24           confinement is critical in the sense that it reflects the degree to
             which the inmate is prepared to adjust to parole release.'
25           *Greenholtz,* 442 U.S. at 15. Regardless of whether the BPT ever
             was entitled to rely upon the commitment offense to find that this
26           particular petitioner posed an unreasonable risk of danger and was
             unsuitable for parole, under these unusual circumstances, the BPT's

27

28

9

continued reliance on the commitment offense violates due process because the facts surrounding the offense do not now constitute 'some evidence' with 'some indicia of reliability' of petitioner's dangerousness. *See Hill,* 472 U.S. at 455; *Biggs,* 334 F.3d at 917; *Irons,* 358 F.Supp.2d at 947; *Masoner v State,* 2004 WL 1080177 *1-2 (C.D. Cal. 2004)." (*Id.* at *16).

This reasoning is in line with <u>Biggs v Terhune</u>, 334 F. 3d 910 (9th Cir. 2003), in which the Ninth Circuit Court of Appeals upheld that the Board's reliance on the sole factors of the commitment offense to deny parole to a prisoner at his minimum eligible parole date, despite an intervening period of exemplary conduct. Nevertheless, the <u>Biggs</u> court stated:

"The parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be ***initially justified*** as fulfilling the requirements set forth by the state law.

Overtime, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Bigg's offense and prior conduct would raise serious questions involving his liberty interest in parole." (*Biggs, supra,* 334 F.3d at 916).

"A continue reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (*Id.* at 917).

All current and relevant evaluations conclude that petitioner's post conviction behavior indicates a changed man, not unlike that contemplated in <u>Biggs v Terhune</u>. Still the Executive Branch or Governor reversed all the evidence and expert evaluations in favor of finding petitioner suitable for parole. (<u>McQuillon v Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002) ["presumption that parole release will be granted"]; <u>Rosenkrantz</u>, supra, 29 Cal.4th at 654 ["expectation that [petitioner] will be granted parole"]). By doing so, the Executive Branch or Governor has in effect illegally converted petitioner's sentence to life without possibility of parole (LWOP). (<u>Rodriguez</u>, supra, 14 Cal.3d at 654 fn.18 ["For purposes of assessing the constitutional proportionality of an inmates term, the court will deem it to have been fixed at the maximum if the Authority does not act promptly to fix the primary term of a prisoner committed to the Department of Corrections to serve an indeterminate sentence."]).

If the Governor is permitted to deny parole based on the immutable and static factors of the crime itself and petitioner's pre-commitment factors, then the Executive Branch or Governor could continue to

1   deny parole forever as those circumstances will never change. This would, in effect, convert petitioner's

2   sentence to LWOP, a sentence not prescribed by the Legislature for petitioner's offense of second degree

3   murder. It would also make inconsequential petitioner's achievements in attaining the goal of

4   rehabilitation, and violate due process enunciated in Biggs, supra, at 915-916. (See also, Hunter v

5   Disabato, 137 F.Supp.2d 529, 544 (1998) ["If it is felt that the circumstances of his crime justify life

6   imprisonment without parole, it falls to the Legislature to make that decision, not the parole Board"];

7   Relying on United States Supreme Court authority, in the recently published case of Martin v.

8   Marshall, 431 F.Supp.2d. 1038 (N.D.Cal. 2006), held that continuous reliance on the circumstances of

9   the offense in denying parole constituted a due process violation. Martin wrote:

10  "The Governor's reliance on the first two facts--petitioner's flight
    from the scene of the crime without securing medical help and
11  petitioner's involvement with drugs at the time he committed the
    crime--presents a different problem. Both of these facts date from at
12  or before the time of the crime. Because petitioner cannot change the
    past, denying petitioner parole based only on the facts surrounding
13  the crime itself effectively changes his sentence from twenty years-
    to-life into life imprisonment without the possibility of parole.
14  The Supreme Court has recognized that [t]he requirements of due
    process vary with the private and governmental interests at stake and
15  the circumstances of the alleged deprivation.... To insure that a state-
    created parole scheme serves the public interest purposes of
16  rehabilitation and deterrence, the Parole Board must be cognizant
    not only of the factors required by state statue to be considered, but
17  also the concepts embodied in the Constitution requiring due process
    of law.
18  Biggs, 334 F.3d at 916 (citing Morrissey v. Brewer, 408 U.S. 471,
    481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Greenholtz, 442 U.S.
19  at 7-8). In Biggs, the Ninth Circuit applied the Supreme Court's
    language in Morrissey and Greenholtz when analyzing whether the
20  denial of an inmate's parole violated his constitutional due process
    rights. The court recognized that in the context of denying an inmate
21  parole, reliance 'on an unchanging factor, [such as] the circumstance
    of the offense and conduct prior to imprisonment, runs contrary to
22  the rehabilitative goals espoused by the prison system and could result
    in a due process violation.' Id. at 917.
23
    ¶ Petitioner here has 'demonstrate[d] exemplary behavior and
24  evidence of rehabilitation,' as required by the Biggs court, for a
    significant period of time. Therefore, the sole reliance on petitioner's
25  commitment offense in denying him parole impinges on petitioner's

26

27

28

constitutional liberty interest in parole." (*Id.* at 1046-1047).

Furthermore, in <u>Irons v Warden of California State Prison-Solano</u>, 358 F.Supp.2d 936 (E.D. Cal. 2005), wrote:

> "Continuous reliance on unchanging circumstances transforms an offense for which California law provides eligibility for parole into a de facto life imprisonment without the possibility of parole. The court asks rhetorically -- what is it about the circumstances of petitioner's crime or motive which are going to change? The answer is nothing. The circumstances of the crime will always be what they were, and petitioner's motive for committing them ***will always be trivial*** . Petitioner has no hope for ever obtaining parole except perhaps that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial. Given that ***no one*** seriously contends lack of seriousness or lack of triviality at the present time, the potential for parole in this case is remote to the point of non - existence. Petitioner's liberty interest should not be determined by such an arbitrary, remote possibility.
>
> "¶ To a point it is true, the circumstances of the crime and motivation for it may indicate a petitioner's instability, cruelty, impulsiveness, violent tendencies and like. However, ***after fifteen or so years*** in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the crime ***is near zero.*** " (*Id.* at 947 fn.2).

In the instant case, the BPT had relied on these unchanging factors at least ***nine*** prior times in finding petitioner unsuitable for parole. Petitioner has continued to demonstrate exemplary behavior and evidence of rehabilitation. After the tenth hearing the BPT found Petitioner suitable for parole only to have the Governor reverse the parole grant based on the same static factors of the crime. Under these circumstances, the continued reliance on these factors violate Petitioner's liberty interest in parole and right to due process.

In <u>Masoner</u> , <u>infra</u>, for example, the court held that "the BPT'S refusal to grant a parole date and repeated failure to provide post commitment support for the decisions [had] violated Masoner's liberty interest and due process rights." (<u>Masoner v State</u>, 2004 WL 1080177 at *1-2 (C.D. Cal. 2004)

[" [A]lthough a commitment offense can provide some evidence to justify the initial denial of parole date, subsequent denials in the face of exemplary behavior and overwhelming evidence of rehabilitation raises serious questions involving an inmate's liberty interest in parole." Citing, <u>Biggs</u>, supra, 334 F. 3d at 919] ).

1    Furthermore, yet another Federal District Court of California recently explained the rational of why

2    continuous use of the commitment offense violates due process as follows:

3    "Whether the facts of the crime of conviction, or other unchanged
     criteria, affect the parole eligibility decision can only be predicated
4    on the 'predictive value' of the unchanged circumstances.
     Otherwise, if the unchanged circumstances per se can be used to
5    deny parole eligibility, sentencing is taken out of the hand of the
     judge and totally reposited in the hands of the BPT. That is, parole
6    eligibility could be indefinitely and forever delayed based on the
     nature of the crime even though the sentence given set forth the
7    possibility of parole -- a sentence with the fact of the crime fresh
     in the mind of the judge. While it would not be a constitutional
8    violation to forego parole altogether for certain crimes, ***what the***
     ***state cannot constitutionally do is have a sham system where***
9    ***the judge promises the possibility of parole, but because of the***
     ***nature of the crime, the BPT effectively deletes such from the***
10   ***system.***

11   ¶ Nobody elected the BPT Commissioners as sentencing judges.
     Rather, in some realistic way, the facts of the unchanged
12   circumstances must indicate a present danger to the community if
     released, and this can only be assessed not in a vacuum, after four
13   or five eligibility hearings, but counter poised against the back
     drop of prison events." (Bair v Folsom State Prison, 2005 WL
14   2219220, *12 fn. 3 (E.D. Cal. 2005) report and recommendation
     adopted by 2005 WL 3081634 (E.D. Cal. 2005)).

16   In the circumstances of petitioner's case, the Governor's reliance upon it's belief's of petitioner's

17   involvement in the offense violates due process. First, continued reliance upon these unchanging factors

18   makes a sham of California's parole system and amounts to an arbitrary denial of petitioner's "liberty

19   interest in release on parole," "expectation that he will be granted parole," and his "presumption that

20   parole release will be granted." (See Mc Quillion v Duncan 306 F. 3d 895, 902 (9th Cir. 2002);

21   B i g g s , supra, 334 F.3d at 914-915; Rosenkrantz, supra, 29 Cal.4th at 654, 661). Petitioner has

22   been denied parole on ten different occasions. Continued reliance upon these unchanging factors

23   amounts to converting petitioner's parolable offense to a term of life without the possibility of parole.

24   (See, e.g., Irons, supra, 358 F. Supp.2d at 947 ["continuous reliance on the unchanging circumstances

25   _____

26

27

28

1   transforms an offense into a de facto life imprisonment without the possibility of parole"]; Scott, supra,

2   34 Cal.Rptr. 3d at 919 - 920, 133 Cal.App. 4th at 594 -595; Shaputis, supra, 37 Cal. Rptr. 3d at

3   335). Second, the circumstances of the crime that occurred over 27 years ago do not now amount to

4   some evidence supporting the conclusion that petitioner *"currently"* poses an unreasonable risk of

5   danger if released. (See, In re Smith 114 Cal.App. 4th 343, 370, 372 (2003) [evidence must show

6   "that a prisoner *currently* would pose an unreasonable risk of danger if released at this time."];

7   Shaputis, supra, 37 Cal. Rptr. 3d at 334 - 335 [same]; Wen Lee, supra, 2006 DJDAR at 13965 ["To

8   deny parole, the reason must relate to a defendant's *continued* unreasonable risk to public safety"]);

9   Dannenberg, supra, 34 Cal.4th at 1071, 1080 [same]).

10      Upholding the recital of the commitment offense and conduct prior to imprisonment as the Governor

11   has done to deny petitioner parole for the tenth time, *"converts a court reviewing the denial of parole*

12   *into a potted plant."* (In re Scott (2004) 119 Cal. App. 4th 871, 898). In the parole context, the

13   requirements of due process can only be met if "some evidence" supports the decision and the evidence

14   underlying the decision is supported by "an indicia of reliability." (Biggs, supra, 334 F. 3d at 915;

15   Caswell v Calderon 363 F.3d 832, 839 (9th Cir. 2004); Scott, supra, 119 Cal.4th at 899;

16   Superintendent v Hill 472 U.S. 445, 455-457 (1985)). **fn. 1/**

17   **B) Petitioner's "Direct Involvement" In The**
       **Commitment offense Does Not Rise To The Level Of**

18   **"Particularly Egregious" Or "Exceptionally Callous"**
       **To Support A Reversal Of Parole By The Governor.**

19

20      For a second degree murder conviction, the law applicable to such situation states: "[E]very person

21   who unlawfully kills a human being with malice afterthought ... is guilty of the crime of murder in

22   violation of Penal Code § 187." (CALJIC No. 8.10) "Malice may be either express or implied. [¶]

23   Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is

24   implied when: ... [¶] The act was deliberately performed with knowledge of danger to and with

25   conscious disregard for human life." ( CALJIC No. 8.11)

26      Malice, as such, is as defined as: " In murder that condition of mind which prompts one to take a life

27   of another without just cause or provocation." (Blacks Law Dictionary 4th edition at page 1109; Scott,

28   supra, 119 Cal.App.4th at 895 fn.14 ["[M]alice aforethought ... is manifested by the doing of an

1  unlawful or felonious act intentionally and without legal cause or excuse"]). In <u>People v. Salcido</u> 263

2  Cal.App.2d 1 (1968), that court wrote:

3        "The Supreme Court, in discussing an analogous situation, has
          said: 'Such malice is implied, when no considerable provocation
4        appears .... [W]here a defendant contends his conviction of second
          degree murder should be reduced to manslaughter he must present
5        evidence of circumstances that justify mitigation."(id. at 6).

6

7  As stated in <u>U.S. v Roston</u>, 986 F.2d 1287, 1290 (9th Cir 1983): "Malice embraces the state of mind

8  which one intentionally commits a wrongful act without legal justification or excuse." In other words, *if*

9  *Petitioner had a legally legitimate cognizable __explanation__ or __excuse__, viz., motive, the offense would*

10  *not be murder, it would be manslaughter or some other justifiable homicide*. This "factor" simply is

11  not relevant to the question of whether a parole applicant should be released on parole. (cf. <u>Scott</u>, supra,

12  119 Cal.App.4th at 893 ["There is *no motive* for lawfully taking the life of another human being that

13  could not reasonably be deemed 'trivial'"]; <u>Irons</u>, supra, 358 F.Supp.2d at 947 [same]; <u>People v Nieto</u>

14  <u>Benitez</u>, 4 Cal.4th 91, 102 (1992) ["Second degree murder is defined as the unlawful killing of a human

15  being *with malice aforethought*."]).

16  In determining whether petitioner committed the offense in an "especially cruel and callous

17  manner," the law is clear that the Board and the Governor is only authorized to consider whether "[t]he

18  ***prisoner*** committed the offense in an especially heinous, atrocious or cruel manner," (Cal. Code Regs.

19  tit., 15 §2402(c)(1); Exhibit M), viz., although petitioner may be legally culpable for the acts of his

20  alleged companions, his suitability for parole must be determined based on ***his*** action. (See, <u>In re</u>

21  <u>Ramirez</u>, 94 Cal.App.4th 549, 570 (2001); <u>In re Smith</u>, 109 Cal.App.4th 489, 504 (2003); <u>Wen Lee</u>,

22  supra, 2006 DJDAR at 13965 [suitability rests on "how Lee actually committed ***his*** crimes"]).). **The**

23  **Board's sole reference to petitioners actions directly with the victim was that he shot the victim**

24  **"once with a 22" rifle.**.

25  In the recent post Dannenberg case, <u>In re Scott</u>, supra, 133 Cal.App. 4th 573, 34 Cal.Rptr. 3d 905,

26  (petition for review denied) the court held that the "unsuitability determination must be predicated on

27  'some evidence' that the particular circumstances of the [prisoner's crime]... indicated exceptional

28  callousness and cruelty with trivial provocation." (id. at 922, citing <u>Dannenberg</u>, supra, 34 Cal.4th at

1    1098). In Scott, Mr. Scott, armed with a handgun, went looking for his wife and boyfriend. When Mr.

2    Scott found them he approached the boyfriend and purposely shot him three times hitting the victim in

3    the head and thigh in which the victim died seven days later. The shooting occurred in front of his

4    thirteen year old son, his wife and "others" in which a stray bullet could have easily struck an innocent

5    bystander. (id. at 908).

6         The Scott court found that the offense was not committed "in an dispassionate and calculated manner

7    . . . or in a manner demonstrating an exceptional callous disregard for human suffering." (id. at 922

8    citing also the connected case of In re Scott, 119 Cal. App.4th 871, 889-892 (2004)). Using illustrations

9    for explanation, the court wrote:

10              "For example, premeditation was considered in Rosenkrantz because,
             though the prisoner had been convicted only of a second degree murder,
11             the evidence 'showed a full week of careful preparation, rehearsal and
             execution.' And that the prisoner, who 'fired 10 shots at close range from
12             an assault weapon and fire at least three or four shots into the victim's
             head as he lay in the pavement, carried out the crime with 'planning,
13             sophistication or professionalism.' (Rosenkrantz, at p.678.) Similarly, the
             evidence of premeditation relied on in In re Lowe (2005) 130 Cal.App.4th
14             1405, which also involved a second degree murder conviction, showed
             that the prisoner 'purchase a gun shortly before the murder, entered his
15             victim's bedroom in the middle of the night while he was asleep,
             unsuspecting, and in a special relationship of confidence and trust with his
16             killer, and shot him five times in the head and chest, execution style.' (id.
             at p. 1414). As the court stated, this evidence showed the murder 'was a
17             cold-blooded execution' and that the prisoner's 'egregious acts [were] far
             more aggravated than the minimum necessary to sustain a second degree
18             murder conviction.' (id. at 1415). In In re Deluna, supra, 126 Cal.App.4th
             585, the petitioner, convicted of a second degree murder, had a physical
19             confrontation with the victim in a bar, left the bar, retrieved a rifle, shot
             him in the mouth and, as the victim bled and walked around the parking
20             lot, followed him and continued firing until he died. The Court of Appeals
             determined that 'the initial wounding and deliberate stalking of a
21             defenseless victim can reasonably be characterized as especially cruel and
             callous. (id. at p. 593).'" (Scott, supra, 34 Cal.Rptr.3d at 922-923).
22

23         Accordingly, the following cases are examples of homicides not rising to the level of crimes

24    committed in an especially heinous, atrocious or cruel manner to deny parole: Smith, supra, 114

25    Cal.App.4th at 350-351, 366-367 [victim shot at close range "in the head" and "twice more as she was

26    falling to the floor," " shot Ms. Garner in the head three times" was not an especially grave crime to

27    support a denial of parole]; Scott, supra, 119 Cal.App.4th at 891-892 and fn. 11, 893, 895 fn.14

28

1  [shooting the victim three times at close range and in front of a child was not an exceptional callous

2  crime to support a denial of parole at the second hearing]; In re Smith 109 Cal.App.4th at 489, 492, 506

3  (2003) [*victim shot twice, severely beaten and drowned*, the court held crime was not committed in an

4  especially heinous, atrocious or cruel manner to deny parole]; Wen Lee, supra, 2006 DJDAR 13961,

5  13964 [Mr. Lee, "armed with a handgun and a box of ammunition," "pulled out his gun and fired five

6  times before it jammed. He hit Soong twice, ... but one of the bullets hit Soong's wife ... in the head

7  killing her." Lee was sentenced to "17 years to life ... for muder and life ... for attempted murder," Court

8  held crime was not "especially heinous, atrocious or cruel manner."]; In re Capistran, 132 Cal.App.4th

9  872, 874 (2003) [victim was assaulted by approximately 14 gang members, stabbed 15 times and died.

10  Capistran bragged about the murder and was arrested still wearing clothing that was stained with the

11  victims blood. Capistran was released by the Court]; compare In re Van Houten ,116 Cal.App.4th :339,

12  364-365 (2004). [member of the Charles Manson cult was convicted of two murders where the husband

13  and wife were subjected to hearing each other being killed by stabbing. All in an attempt to incite a race

14  war, was a particular egregious crime to deny parole]; Dannenberg, supra, 34 Cal.4th at 1095 [evidence

15  permitted the conclusion that the defendant bludgeoned his wife multiple times with a pipe wrench to

16

17

18

19

20

21

22

23

24

25

26

27

28

1   the point of incapacitating her and then allowed her to drown in the bathtub was a particular egregious

2   crime to deny parole].

3      As previously stated, **petitioner's direct involvement in the offense was that he  shot the victim**

4   **once.** Compared to the above cited cases, petitioner's alleged direct involvement in the offense cannot

5   be deemed "particularly egregious." (Rosenkrantz, supra, 29 Cal.4th at 683). As such, two California

6   Court of Appeals wrote:

7        "Second degree murder requires express or implied malice -- i.e., the
         perpetrator must kill another person with the specific intent to do so; or he
8        she must cause another person's death by intentionally performing an act
         knowing it is dangerous to life with conscious disregard for life. (§§ 187-
9        189; see CALJIC No. 8.11." (Smith, supra, 114 Cal.App.4th at 366).

10       "[A]ll second degree murders by definition involve some callousness --
         i.e., lack of emotion or sympathy, emotional insensitivity, indifference to
11       the feelings and sufferings of others. [citation.] As noted, however, parole
         is the rule, rather than the exception, and a conviction for second degree
12       murder does not automatically render one unsuitable." (Scott, supra, 119
         Cal. App. at 891; See also, Wen Lee, supra 2006 DJDAR at 13963
13       [**"all murders are atrocious"**]).

14       "The regulations ... contemplate that an inmate may be deemed suitable
         for  release even though his offense demonstrated 'exceptionally callous
15       disregard for human suffering.'" (Scott, supra, 119 Cal.App.4th at 892 fn.
         11).
16

17   As the court in Irons, supra, stated:
         "The court asks rhetorically -- what is it about the circumstances of
18       petitioner's crime or the motivation which are going to change?  The
         answer is nothing. The circumstances of the crime will always be what
19       they were, and petitioner's motive for committing them *will always be*
         *trivial.* Petitioner has then no hope for ever obtaining parole except
20       perhaps that a panel in the future will arbitrarily hold that the
         circumstances were not that serious or the motive was more than trivial.
21       Given that *no one* seriously contends lack of triviality at the present time,
         the potential for parole in this case is remote to the point of non-existence.
22       Petitioner's liberty should not be determined by such an arbitrary, remote
         possibility." (Irons, supra, 358 F.Supp.2d at 947).
23

24      The Board repeatedly used these factors specified herein to deny parole on nine separate occasions.

25   The Governor's reversal of parole following Petitioner's parole grant is not supported by the evidence in

26   the record. The Governor's decision "may not be upheld merely because  he mouthed words that have

27   been held to constitute [some evidence]. There must also be an adequate factual underpinning for the

28   Executive Branch or Governor's determination." (McQuillion, supra, 306 F.3d at 905, quoting In re

1    Casewell 92 Cal.App.4th 1017, 1027 (2001)). Under the applicable legal standards stated herein, the

2    circumstances of petitioner's alleged direct involvement in the commitment offense does not rise to the

3    level of "especially heinous, atrocious, or cruel manner" to justify a reversal of parole.   27 years after

4    the offense was committed. 2/

## QUESTION 2

6    **BY NOT APPLYING THE APPROPRIATE 'STANDARD OF REVIEW' DID THE TRIAL COURT AND CALIFORNIA COURT OF APPEALS FAILE TO RENDER A REASONED OPINION CONSISTENT WITH STARE DECISIS WHEN IT DENIED PETITIONER'S HABEAS CORPUS PETITION THUS VIOLATING HIS STATE AND FEDERAL RIGHT TO DUE PROCESS .**

11    ### State Law Standards For Parole For Murderers In California

12        California uses indeterminate sentences for most non-capitol murderers, with the term being life

13    imprisonment and parole eligibility after a certain number of years. A first degree murder conviction

14    yields a base term of 25 years to life and a second degree murder conviction yields a base term of 15

15    years to life imprisonment. See In re Dannenberg, 34 Cal. 4th 1061, 1078 (Cal.) cert. denied 126 S. Ct.

16    92 (2005); Cal. Penal Code section 190. The upshot of California's parole scheme described below is

17    that a release date normally must be set unless various factors exist, but the "unless" qualifier is

18    substantial.

19        A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date

20    "and shall normally set a parole release date...The release date shall be set in a manner that will provide

21    uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and

22    that will comply with the sentencing rules that the Judicial Counsel may issue and any sentencing

23    information relevant to the setting of parole release dates." Cal. Penal Code section 3041 (a)

24    Significantly that statute also provides that the panel " shall set a release date unless it determines that

25    the gravity of the current convicted offense or offenses, or the timing and gravity of current or past

26    convicted offense or offenses, is such that consideration of the public safety requires a more lengthy

27    period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this

28    meeting." Cal. Penal Code section 3041(b).

1    One of the implementing regulations 15 Cal. Code Regs. Section 2401, provides: "A parole date

2    shall be denied if the prisoner is found unsuitable for parole under  Section 2402(c).  A parole date shall

3    be set if the prisoner is found suitable for parole under Section 2402(d).  A parole date set under this

4    article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude

5    with respect to the threat to the public."  The regulation also provides that "[t]he panel shall first

6    determine whether the life prisoner is suitable for release on parole. Regardless of the length of time

7    served , a life prisoner shall be found unsuitable for and denied parole if in the judgement of the panel

8    the  prisoner will pose an unreasonable risk of danger to public safety if released from prison." 15 Cal.

9    Code Regs. Section 2402 (b).  As noted earlier, the governor's review must be done on the basis of the

10   same factors the parole authority is required to consider. See Cal. Penal Code Section 3041.2; Cal.

11   Const. art. V, section  8(b).

12       The regulations contain a matrix of suggested base terms for several categories of crimes. See 15

13   Cal. Code Regs. Section 2403. For example, for second degree murders, the matrix of base ranges from

14   the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some facts of the crime.

15   Some prisoners estimate their time to serve based on the matrix. However,  going straight to the matrix

16   to calculate the sentence puts the cart before the horse because it ignores critical language in the relevant

17   statute and regulations that requires the prisoner first be found suitable for parole.

18       The statutory scheme places individual suitability for parole above a prisoner's expectancy in early

19   setting of a fixed parole date designed to ensure term uniformity. Dannenberg 34 Cal. 4th at 1070-71.

20   Under  state law, the matrix is not reached unless and until the prisoner is found suitable for parole. Id.

21   at 1070-71; 15 Cal. Code Regs. section 2403(a) (" [t]he panel shall set a base term for each life prisoner

22   who is found suitable for parole"), The California Supreme Court's determination of state law in

23   Dannenberg is binding in this habeas action. See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

24       The California Supreme Court also has determined that the facts of the crime can alone support a

25   sentence longer than the statutory minimum even if everything else about the prisoner is laudable.

26   "While the Board must point to factors beyond the minimum elements of the crime for which the inmate

27   was committed, it need engage in no further comparative analysis before concluding that the particular

28   facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." Dannenberg, 34

1   Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th 616, 682-83 (Cal. 2002), cert denied, 538 U.S.

2   980 (2003) ("[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying

3   parole" but might violate due process "where no circumstances of the offense reasonably could be

4   considered more aggravated or violent than the minimum necessary to sustain a conviction for that

5   offense").

6       The Governor's Decision Was Not Supported By Some Evidence The Governor identified only one

7   factor supporting his decision to reverse the BPT decision and find Mr. Lang unsuitable for parole

8   i.e.,the circumstances of the offense.

9       Both The Los Angeles Superior Court and The California Court of Appeals upheld that decision.

10  See: Attachment, Trial Court Exhaustion and Court of Appeals  Exhaustion.

11      While those courts did support the decision and discussed the law, neither court mentioned the

12  **evidence** it relied upon in reaching its conclusion that there was some evidence to support the

13  Governor's decision, and how that evidence involved a **particularly egregoius** crime to qualify it for an

14  arbitrary reversal of petitioner's parole grant.

15      A further issue raised by the facts and proceedings of this case is the significance of petitioner's age

16  at the time of the offense. Petitioner was only 18 years old at the time of the offense and therefore had

17  not reached the age of majority.  This issue raised by petitioner was **never** ruled upon or discussed in

18  either court's denial. In Roper v Simmons, 125 S.Ct. 1183, 543 U.S. 551, 161 L.Ed.2d 1 (2005), the

19  United States Supreme Court recently recognized the predictive value of the conduct of such a young

20  person is less than that of an adult and invalidated the sentence imposed on a 17 year old explaining:

21          "Three general differences between juveniles under 18 and adults
            demonstrate that juvenile offenders cannot with reliability be
22          classified among the worst offenders. First, as any parent knows and
            as the scientific and sociological studies respondent and his amici
23

24

25

26

27

28

cite tend to confirm, a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions [ ] The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. [ ] The third broad difference is that the character of the a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. [ ] These differences render suspect any conclusions that a juvenile falls among the worst offenders. The susceptibility of juveniles to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.' *Thompson v Oklahoma,* 487 U.S. 815, 835 (1988) (plurality opinion). Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative  influences in their whole environment. See *Stanford v Kentucky,*  492 U.S. 361, 395 (1989) (Brennan, J. dissenting). The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exits that minor's character deficiencies will be reformed. Indeed, '[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.' *Johnson v Texas,* 509 U.S. 350, 368 (1993)." (*Id.* 125 S.Ct. at 1195, 161 L.Ed.2d at 21-22, 543 U.S. at 561-562; See also, Rosenkrantz, supra, 444 F.Supp.2d 1063, 2006 WL 2327085 at 16, citing Roper for the same proposition]) fn.**3/**

The United States Supreme Court acknowledge that "The qualities that distinguish juveniles from adults do not disappear when an individual turns 18," (*Id.* at 1197),but decided that for the purpose of a categorical rule, applicable at the time the sentence is imposed, "a line must be drawn." (*Id.* at 1198.) In a case involving a 18 year old when the offense occurred and received a sentence of 15 years to life with the possibility of parole, the above reasons young offenders "cannot with reliability be classified among the worst offenders," which reasons "do not disappear when an individual turns 18,"

1   may also preclude a parole denial based solely on an examination of the offense under the "some

2   evidence" standard. When the offense has to be seen as an example of youthful ignorance and

3   "underdevelop[ment]," and the inmate's subsequent record shows he has, at age 45, become an adult

4   who has grown past those immaturities, the crime itself is not enough to, alone, permit a reversal of

5   parole granted by the BPT after Petitioners was found suitable for parole at his tenth parole

6   consideration hearing.

7        While it may have been reasonable to rely on petitioner's offense as an indicator of dangerousness

8   for some period of time, continued reliance on such unchanging circumstances -- after 26 plus years of

9   incarceration and ten parole suitability hearings -- violates due process because these factors now lack

10  predictive value with regards to petitioner's present and future dangerousness. (Scott, supra, 34 Cal.Rptr.

11  at 919 -920 & fn.9, citing Biggs, supra, and Irons, supra).

12       After 26 plus years of rehabilitation and ten suitability hearings Petitioner was found suitable for

13  parole and deemed no threat to society only to be denied by the Governor. This only served to

14  undermine the Board's ability to accurately predict petitioner's future dangerousness as nil. This

15  prediction is more egregious than those found in In re Irons, for Irons had attended four Parole

16  Consideration Hearings whereas Petitioner has attended ten (10) and was found suitable for parole

17  unlike Irons. (See, Irons, supra, 358 F. Supp. 2d at 947 n. 2 ["four prior times in finding [Mr. Irons]

18  unsuitable for parole" and " after 15 years" of imprisonment, ability to assess dangerousness is "near

19  zero." ]; Scott, supra, 133 Cal. App. 4th at 595, 34 Cal. Rptr. 3d at 919 - 920 [" the predictive

20  value of the commitment offense may be very questionable after a long period of time." ] )

21       Although Petitioner raised only one claim in the Trial Court, that one claim encompassed

22  alleged violations of Constitutional magnitude. The mere fact that the Executive Branch or Governor

23  reversed petitioner's parole grant is a question of liberty. One of the most sacred rights to human

24  existence. The trial court was bound to seek guidance from both the California Court of Appeals and the

25  California Supreme Court prior to rendering it's decision . Petitioner is left with what amount's to a

26  "post card" denial from the Trial Court. For it merely said that the Executive Branch or Governor is

27  empowered by Penal Code section 3041.2 to reverse parole grants. That authority was never in

28

1    question. It's the evidence upon which the Executive Branch or Governor utilized to do so or lack

2    thereof was and remains petitioner's question.

3         It is the opinion of the petitioner that the Trial court failed to apply the Standard of Review which

4    the California Supreme Court instructed the Lower Courts to apply when faced with cases such as this

5    one before the court.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Petitioner is entitled to a more comprehensive due process analysis.

2    //

3    //

4    //

5    **<ins>PRAYER FOR RELIEF</ins>**

6    For the reasons stated herein, petitioner requests that this Court:

7    1. Issue a Writ of Habeas Corpus or order to show cause to the Governor of the State of

8       California to inquire into the legality of Petitioner's incarceration;

9    2. Order the immediate release of Petitioner within ten (10) days of said Order of Release.

10    3. Appoint counsel for Petitioner and:

11    4. Grant any other relief that this Court may deem just and proper.

12    **<ins>VERIFICATION</ins>**

13    I the undersigned say that I am the petitioner in this action. I declare under the laws of the State of

14    California that the foregoing is true and correct, except to those matters on my information and belief,

15    and to those matters, I believe them to be true.

16

17    Date: *March 27, 2007*

18                Submitted by:

19

20

21    **Laurence D. Lang**, In Pro Se

22

23

24

25

26

27

28

CLERK'S OFFICE
Court of Appeal
SECOND APPELLATE DISTRICT
300 SOUTH SPRING STREET
SECOND FLOOR · NORTH TOWER
LOS ANGELES, CA 90013-1204

Laurence Lang
C28866
Correctional Training Facility
P.O. Box 689 CTF-C F-140
Soledad, CA 93960

Fw- 3Y3ª





UNITED STATES POSTAGE
02 1A
9004328563
MAILED FROM ZIP CODE 90013
MAR 23 2007
$ 00.390

Laurence Lang
C28866
Correctional Training Facility
P.O. Box 689 CTF-C F-140
Soledad, CA  93960



Case Number B196099
Division 1
In re Laurence D. Lang
on
Habeas Corpus

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

*filed*
*3-23-07*

DIVISION ONE

| | |
|---|---|
| In re | B196099 |
| LAURENCE LANG, | (L.A.S.C. No. A196619) |
| on | O R D E R |
| Habeas Corpus. | |

THE COURT*:

The petition for writ of habeas corpus, filed January 16, 2007; and the opposition thereto, filed March 16, 2007, have been read and considered.

The petition is denied.

---

*MALLANO, Acting P. J.                    JACKSON, J.**

---

**    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

I would issue an order to show cause.

In 1981, Lang was convicted of *second degree murder* and sentenced to state prison for a term of 17 years to life. He completed his minimum term in 1994. In 2006, the Parole Board granted parole but Governor Schwarzenegger reversed that decision on the ground that the gravity of the commitment offense outweighs all the positive factors relied on by the Board.

Because Lang has at this point completed the minimum term he would have had to serve had he been convicted of *first degree murder* and been sentenced to a term of 27 years to life, and because the predictive value of the commitment offense as an unsuitability factor may be very questionable after this long period of time (*In re Elkins* (2006) 144 Cal.App.4th 475, 498), Lang's protected liberty interests (*Rosenkrantz v. Marshall* (2006) 444 F.Supp.2d 1063, 1077-1078) deserve more due process than a summary denial of his petition. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 690, conc. opn. of Moreno, J. [there "will come a point . . . when petitioner would have become eligible for parole if he had been convicted of first degree murder. One petitioner reaches that point, it is appropriate to consider whether his offense would still be considered especially egregious for a *first degree* murder in order to promote the parole statute's goal of proportionality between the length of sentence and the seriousness of the offense . . . . Under this circumstance, the justification for denying his parole would become less clear, even under the deferential 'some evidence standard"].)

VOGEL, J.

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

ATE PRINTED: 12/29/06

------------------------------------------------------------------

ASE NO. A196619

HE PEOPLE OF THE STATE OF CALIFORNIA
                    VS.
EFENDANT 02:  LAURENCE  LANG

------------------------------------------------------------------

OUNT 01: 187 PC FEL  - MURDER.


N 12/29/06 AT 1030 AM  IN SOUTHWEST DISTRICT DEPT SWF

ASE CALLED FOR PURSUANT TO WRITTEN REQUEST

ARTIES: FRANCIS J. HOURIGAN III (JUDGE)  MARILYNN HOLCOMB  (CLERK)
        NONE        (REP)  NONE  (DDA)

URSUANT TO DEFENDANT'S WRITTEN REQUEST, AND NOT REPRESENTED BY COUNSEL

HE COURT FILE IS UNAVAILABLE.  THE COURT HAS RECEIVED A COPY
F THE REGISTER OF ACTIONS FOR THIS CASE.

N DECEMBER 27, 2006, THE PETITIONER'S WRIT OF HABEAS CORPUS
AS RECEIVED IN DEPARTMENT SW-F OF THE LOS ANGELES COUNTY
UPERIOR COURT.

HE PETITIONER IS CURRENTLY SERVING A TERM OF 17 YEARS TO LIFE
N THE DEPARTMENT OF CORRECTIONS AFTER A CONVICTION FOR THE

RIME OF MURDER.

HE COURT HAS READ THE PETITION AND REVIEWED THE ATTACHED
XHIBITS.

N HIS SINGLE GROUND FOR RELIEF, PETITIONER STATES THAT THE
OVERNOR'S CONCLUSION THAT PETITIONER PRESENTLY POSES AS
NREASONABLE PUBLIC SAFETY RISK IF RELEASED FROM PRISON IS NOT
UPPORTED BY ANY EVIDENCE IN THE RECORD.  FURTHER, PETITIONER'S
ONTENDS THAT HIS STATE AND FEDERAL DUE PROCESS RIGHTS HAVE BEEN
IOLATED BY THE GOVERNOR'S DECISION TO REVERSE THE PAROLE
OARD'S GRANT OF PAROLE.

ENAL CODE SECTION 3041.2 AUTHORIZES THE GOVERNOR TO REVIEW
PAROLE DECISIONS OF THE BOARD OF PAROLE HEARINGS.

CASE NO. A196619
DEF NO. 02                                    DATE PRINTED 12/29/06


CASE LAW DISCUSSES THE AUTHORITY OF THE GOVERNOR TO REVIEW
AND, IN APPROPRIATE CASES, TO REVERSE THE DECISION OF THE PAROLE
BOARD.
IN RE SMITH 114 CAL. APP. 4TH 343
IN RE MCCLENDON 113 CAL. APP. 4TH 315

AFTER A FULL REVIEW OF THE RECORD SUBMITTED BY PETITIONER IN HIS
WRIT, THE COURT FINDS THAT PETITIONER HAS NOT STATED ADEQUATE
FACTUAL GROUNDS TO ESTABLISH THAT HE WAS DENIED DUE PROCESS OF
LAW IN THE REVIEW AND DECISION BY THE GOVERNOR TO REVERSE THE
GRANTING OF PAROLE BY THE PAROLE BOARD.


FURTHER, THE COURT FINDS THAT THE GOVERNOR'S DECISION IS
SUPPORTED BY THE EVIDENCE IN THE RECORD.  THE PETITION FOR WRIT
OF HABEAS CORPUS IS DENIED.

A COPY OF THIS MINUTE ORDER IS SENT TO THE PETITIONER.


          LAURENCE D. LANG, CDC #C 28866
          C/O DEPARTMENT OF CORRECTIONS AND REHABILITATION
          P.O. BOX 689  CTF-C  F242
          SOLEDAD, CA   93960-0689


NEXT SCHEDULED EVENT:
PTN WRIT HABEAS CORPUS FILED

# PROOF OF SERVICE BY MAIL

## (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
               ) SS.
COUNTY OF MONTEREY )

I, _____Laurence Lang CDCR# C-28866_____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I  am/~~am not~~  a party to the within action.

My  business/residence  address is P.O. Box 689, Soledad, California, 93960-0689.

On ____March 27,_____, 20 _07____, I served the foregoing:

____Petition For Review_____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

Court Of Appeal
Second Appellate District
300 South Spring Street
Second Floor—North Tower
Los Angeles, CA. 90013-1204

Department of Justice
Office Of The Attorney General
110 West "A" Street Ste. 1100
P.O. Box 85266
San Diego, CA. 92186-5266

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this ___27th____ day of ____March_____, 20 _07__, at

Soledad, California.

/S/ Laurence Lang